1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                   SOUTHERN DISTRICT OF CALIFORNIA

10

11  ALFREDERICK LOVE,                )  Civil No. 06cv0640 WQH(RBB)
                                     )
12              Petitioner,          )  **REPORT AND RECOMMENDATION RE:**
                                     )  **DENYING PETITION FOR WRIT OF**
13  v.                               )  **HABEAS CORPUS [DOC. NO. 1] AND**
                                     )  **ORDER DENYING REQUEST FOR**
14  L.E. SCRIBNER,                   )  **EVIDENTIARY HEARING [DOC. NO.**
    Warden,                          )  **7]**
15                                   )
                Respondent.          )
16  _____ )

17       On March 22, 2006, Alfrederick Love, a state prisoner

18  proceeding pro se and in forma pauperis, filed a Petition for Writ

19  of Habeas Corpus [doc. no. 1].  Petitioner alleges one claim for

20  relief:  The prosecutor's use of peremptory challenges to exclude

21  "all black jurors from the seated panel" and the trial court's

22  denial of Love's motion to set aside the peremptory challenge of

23  the only African-American juror resulted in a violation of

24  Petitioner's right to equal protection under the Fourteenth

25  Amendment.  (Pet. 5.)

26       On May 12, 2006, Respondent filed an Answer, which included a

27  Memorandum of Points and Authorities [doc. no. 5] and a Notice of

28  Lodgment [doc. no. 6].  On June 20, 2006, Love filed his Traverse

                                  1

1 [doc. no. 7].  Petitioner also filed a Motion for Leave to Insert
2 Errata on June 22, 2006 [doc. no. 9].  The Court denied Love's
3 Motion on July 18, 2006, but notified Love that the page attached
4 to his Motion will be "considered as page number one of Exhibit A
5 of his Traverse" [doc. no. 10].

6      After reviewing the Petition, Respondent's Answer, the
7 Lodgments, and Petitioner's Traverse, including the previously
8 omitted first page of Exhibit A, this Court finds that Love is not
9 entitled to the relief requested and recommends that his Petition
10 for Writ of Habeas Corpus be **DENIED** for the reasons outlined below.

11                       **I.   FACTUAL BACKGROUND**

12 **A.   <u>According to the Prosecution</u>**

13      On August 27, 2001, a prison riot broke out on the basketball
14 court in the yard at Calipatria State Prison ("Calipatria") where
15 Petitioner was housed.  (Lodgment No. 8, Rep.'s Tr. vol. 8, 156-58,
16 171, July 22, 2003.)  California Department of Corrections ("CDC")
17 Sergeant Kenneth R. Grady was working in the yard that day.  (<u>Id.</u>
18 at 156.)  All inmates in the yard were ordered to get down into a
19 seated position with their legs extended straight out in front of
20 them.  (<u>Id.</u> at 167-69.)

21      Love and two other inmates were standing next to a gate near
22 the basketball court when Sergeant Grady approached them and
23 ordered them to get down.  (<u>Id.</u> at 171-72.)  The two inmates next
24 to Petitioner sat down, but Love remained standing, even after
25 Grady gave the order a second and third time.  (<u>Id.</u> at 173.)  Grady
26 then sprayed Petitioner for three seconds with his oleoresin
27 capsicum ("O.C."), or hot pepper, spray.  (<u>Id.</u>)

28

1  Love finally complied with the order.  (<u>Id.</u> at 175.)  He sat
2  on the ground and "scooted" from his original spot on the asphalt
3  to a grassy area.  (<u>Id.</u> at 177.)  Grady then left Petitioner's side
4  so that he could attend to the incident on the basketball court.
5  (<u>Id.</u>)

6  Approximately five minutes later, Sergeant Grady returned to
7  handcuff Love and escort him to the shower area for
8  decontamination.  (<u>Id.</u> at 178.)  Petitioner was yelling and
9  screaming at Grady that he did not have to spray him.  (<u>Id.</u>)  Grady
10 told Love, "'Just let me cuff you up and get you to the water
11 shower area.'"  (<u>Id.</u>)  Petitioner was sitting on a step near an
12 emergency exit at that point, and he remained seated while Sergeant
13 Grady put a plastic handcuff around his left hand.  (<u>Id.</u> at 179-
14 81.)  Before Grady could get the other cuff on Love's right hand,
15 Petitioner swung around and punched Grady in the left eye with his
16 free right hand.  (<u>Id.</u> at 181, 184.)  Petitioner's fist caught the
17 sunglasses Sergeant Grady was wearing and caused a cut under
18 Grady's left eye that required twenty-two stitches.  (<u>Id.</u> at 186-
19 87.)

20 Just before Sergeant Grady walked over to handcuff Love, he
21 asked Officer Brian K. Walker for assistance.  (<u>Id.</u> at 247, 253.)
22 Officer Walker was handcuffing someone on the basketball court, and
23 he agreed to assist Grady as soon as he finished.  (<u>Id.</u> at 253.)
24 Walker saw Petitioner stand up and punch Grady, so Walker "rushed
25 over and pushed Sergeant Grady out of the way."  (<u>Id.</u> at 254-55.)
26 Love then began throwing punches at Walker, one of which connected
27 with Walker's right cheek.  (<u>Id.</u> at 255.)  Officer Walker sprayed
28

1  Petitioner with O.C. spray and then used his body weight to take
2  Love to the ground.  (<u>Id.</u> at 256.)

3  **B.   <u>According to the Defense</u>**

4      On the morning of August 27, 2001, Petitioner was playing
5  Scrabble at a picnic table in the yard with inmate Andre Bailey.
6  (<u>Id.</u> at 316, 318.)  Bailey witnessed the incident between Love and
7  Sergeant Grady.  (<u>Id.</u> at 322.)  Bailey saw Grady grab Petitioner's
8  arm and pick him up off the ground by the collar of his t-shirt to
9  handcuff him.  (<u>Id.</u> at 323-24, 338-39.)  As Love was being
10  handcuffed, he may have elbowed Sergeant Grady, but he did not
11  punch him.  (<u>Id.</u> at 324.)  Bailey saw Grady back up after
12  Petitioner threw an elbow at him, and then he saw other officers
13  take Love to the ground.  (<u>Id.</u> at 346.)

14      According to another inmate, Olymeous Matthews, Petitioner was
15  already sitting on the ground when an officer sprayed him with O.C.
16  spray.  (Lodgment No. 8, Rep.'s Tr. vol. 9, 358, 362, July 23,
17  2003.)  Other CDC officers testified that they saw Love strike or
18  hit Sergeant Grady, but they did not see whether Grady had done
19  something to Petitioner to injure Love's hands, wrists, or arms
20  before Petitioner struck him.  (<u>Id.</u> at 426, 436-37, 481, 487-90;
21  Lodgment No. 8, Rep.'s Tr. vol. 10, 554, 581-86, July 24, 2003.)

22  **C.   <u>Jury Selection</u>**

23      Love represented himself during the jury selection process and
24  at trial.  (Lodgment No. 9, Rep.'s Augmented Tr. vol. 5, 126, July
25  17, 2003.)  On the first day of the selection process, the trial
26  judge excused or deferred service for all of the potential jurors
27  with qualifying hardships.  (<u>Id.</u> at 126-63, 170-73.)  The judge
28  then conducted judicial voir dire of the twenty-four remaining

potential jurors.  (Id. at 173-201.)  After everyone with hardships was dismissed, Ms. McGee was the only African-American left in the jury pool.  (Lodgment No. 9, Rep.'s Augmented Tr. vol. 6, 372, July 21, 2003.)  The prosecution used its eighth peremptory challenge to excuse Ms. McGee.  (Lodgment No. 9, Rep.'s Augmented Tr. vol. 6, 368-69.)

As soon as peremptory challenges were completed, Love made a "Wheeler/Batson" objection to her dismissal.  (Id. at 371); see Batson v. Kentucky, 476 U.S. 79, 89 (1986) (holding that the prosecution's use of peremptory challenges to eliminate African-Americans from a jury pool violates the Equal Protection Clause); People v. Wheeler, 22 Cal. 3d 258, 276-77, 583 P.2d 748, 761-62, 148 Cal. Rptr. 890, 903 (Cal. 1978) (holding that peremptory challenges to potential jurors on the basis of "group bias," including challenges to jurors on the basis of membership in a certain racial group, violate the California constitution).

The court heard brief oral argument from both parties. (Lodgment No. 9, Rep.'s Augmented Tr. vol. 6, 371-73.)  The prosecutor argued that he excused McGee because she was "a social worker and an eligibility worker."  (Id. at 371.)  Excusing social workers from jury service was his "personal jury selection" preference.  (Id.)  The prosecutor did not believe that social workers or teachers should sit on the jury because "[t]hey are not favorable jurors to the prosecution."  (Id.)  Love countered:

> From my notes, she's not a teacher and social worker.  The only thing about her background has been law enforcement, which makes it seem -- conventionally she would be leaning toward the District Attorney.  The only thing I can see that you would possibly dismiss her for is that she's African/American.

1 (Id. at 372.)

2   During voir dire, however, Ms. McGee described herself as an

3 "eligibility worker." (Lodgment No. 9, Rep.'s Augmented Tr. vol.

4 5, 268.)  In addition, she disclosed that her brother-in-law is a

5 correctional officer at Calipatria State Prison, and her sister is

6 a supervisor in the records section of the Sheriff's department.

7 (Id. at 275.)  The prosecutor asked her additional questions about

8 her contacts and conversations with her sister and brother-in-law.

9 (Id. at 291-92.)

10   The trial judge overruled Petitioner's objection and denied

11 his motion to set aside the prosecution's peremptory challenge.

12 (Id. at 372-73.)  He found no pattern of discrimination, which he

13 believed was required.  (Id. at 372.)  Furthermore, even if a

14 pattern were established, the judge decided McGee's employment

15 background was a reasonable, nondiscriminatory explanation for

16 excusing her from jury service.  (Id. at 373.)

17                    **II.   PROCEDURAL BACKGROUND**

18   On December 4, 2002, the Imperial County District Attorney

19 filed an information charging Love with two counts of battery on a

20 nonconfined person by a prisoner in violation of California Penal

21 Code section 4501.5 for his attacks against Sergeant Grady and

22 Officer Walker.  (Lodgment No. 1, Clerk's Tr. vol. 1, 1C-2.)  The

23 information also alleged the following sentencing enhancements:

24 (1) Petitioner committed the charged batteries while confined in

25 state prison within the meaning of California Penal Code section

26 1170.1(c); and (2) Love had three prior serious or violent felony

27 convictions for robbery, see Cal. Penal Code § 211 (West 1999),

28 which would provide sentencing enhancements under California Penal

Code sections 667(b)-(i) and 1170.12(a)-(d).  (Lodgment No. 1,
Clerk's Tr. vol. 1, 1C-2.)

On July 28, 2003, the jury convicted Petitioner of battery on
Sergeant Grady but acquitted him of the charge of battery on
Officer Walker.  (Lodgment No. 1, Clerk's Tr. vol. 2, 361-62.)  The
jurors found the allegations of three prior felony convictions were
true.  (Id. at 365.)

Petitioner filed a motion for new trial on August 11, 2003.
(Id. at 377.)  One of the bases of Love's motion was the trial
court's denial of his Wheeler/Batson motion to set aside the
prosecutor's peremptory challenge of juror McGee.  (Id. at 389-90.)
Love also complained that the trial court excused the only two
other African-Americans from the "petit venire."  (Id. at 390.) In
addition, Petitioner moved to strike his prior convictions.  (Id.
at 370.)

The trial judge denied Love's motions.  (Id. at 415.)  The
court sentenced Petitioner to twenty-five years to life in prison,
and this term was to run consecutively to the term he was already
serving.  (Id.)  Love was also ordered to pay a restitution fine of
$200 pursuant to California Penal Code section 1202.4(b).  (Id.)
An additional $200 fine was suspended.  (Id.)

Petitioner obtained appellate counsel and filed an appeal on
June 16, 2004, arguing that the denial of his Wheeler motion was in
error and required reversal.  (Lodgment No. 2, Appellant's Opening
Brief at 8, People v. Love, No. D043053 (Cal. Ct. App. Feb. 2,
2005).)  The California Court of Appeal affirmed Love's conviction
on February 2, 2005.  (Lodgment No. 5, People v. Love, No. D043053,
slip op. at 1, 9 (Cal. Ct. App. Feb. 2, 2005).)

Petitioner filed a petition for review in the California Supreme Court, raising the same <u>Wheeler</u> argument regarding the prosecutor's alleged impermissible use of a peremptory challenge. (Lodgment No. 6, Petition for Review at 3, <u>People v. Love</u>, No. S132156 (Cal. Apr. 13, 2005).)  The California Supreme Court summarily denied Love's petition on April 13, 2005.  (Lodgment No. 7, <u>People v. Love</u>, No. S132156, order at 1 (Cal. Apr. 13, 2005).)

Love then filed his federal habeas Petition in this Court on March 22, 2006 [doc. no. 1], arguing that his Fourteenth Amendment right to equal protection was violated when the prosecutor used a peremptory challenge to exclude "all black jurors" and when the trial court denied Love's motion to set aside that peremptory challenge.  (Pet. 5.)  Respondent Warden Scribner filed an Answer including a Memorandum of Points and Authorities on May 12, 2006 [doc. no. 5], and Petitioner filed his Traverse on June 20, 2006 [doc. no. 7].

### III.   STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C.A. § 2244 (West 1994 & Supp. 2006), applies to all federal habeas petitions filed after April 24, 1996.  <u>Woodford v. Garceau</u>, 538 U.S. 202, 204 (2003) (citing <u>Lindh v. Murphy</u>, 521 U.S. 320, 326 (1997)).  AEDPA sets forth the scope of review for federal habeas corpus claims:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C.A. § 2254(a) (West 1994); see also Reed v. Farley, 512
U.S. 339, 347 (1994); Hernandez v. Ylst, 930 F.2d 714, 719 (9th
Cir. 1991).  Because Love's Petition was filed on March 22, 2006,
AEDPA applies to this case.  See Woodford, 538 U.S. at 204.

In 1996, Congress "worked substantial changes to the law of
habeas corpus." Moore v. Calderon, 108 F.3d 261, 263 (9th Cir.
1997).  Amended § 2254(d) now reads:

> An application for a writ of habeas corpus on behalf
> of a person in custody pursuant to the judgment of a
> State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court
> proceedings unless the adjudication of the claim --
>
> (1) resulted in a decision that was contrary
> to, or involved an unreasonable application of,
> clearly established Federal law, as determined
> by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an
> unreasonable determination of the facts in
> light of the evidence presented in the State
> court proceeding.

28 U.S.C.A. § 2254(d) (West Supp. 2006).

To present a cognizable federal habeas corpus claim, a state
prisoner must allege that his conviction was obtained "in violation
of the Constitution or laws or treaties of the United States."  See
28 U.S.C. § 2254(a).  Petitioner must allege that the state court
violated his federal constitutional rights.  See Reed, 512 U.S. at
347; Hernandez, 930 F.2d at 719; Jackson v. Ylst, 921 F.2d 882, 885
(9th Cir. 1990).

An application for habeas corpus relief may not be granted
"unless it appears that -- (A) the applicant has exhausted the
remedies available in the courts of the State; or (B)(i) there is
an absence of available State corrective process; or (ii)
circumstances exist that render such process ineffective to protect

9

the rights of the applicant."  28 U.S.C.A. § 2254(b)(1)(A)-(B) (West Supp. 2006).  To satisfy exhaustion, a habeas petition must "'fairly present' federal claims to the state courts in order to give the State the 'opportunity to pass upon and to correct alleged violations of its prisoners' federal rights . . . .'"  <u>Duncan v. Henry</u>, 513 U.S. 364, 365 (1995) (quoting <u>Picard v. Connor</u>, 404 U.S. 270, 275 (1971)); <u>see also</u> <u>Gatlin v. Madding</u>, 189 F.3d 882, 887 (9th Cir. 1999).  To fairly present a federal claim, the petitioner "must include reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle the petitioner to relief."  <u>Gray v. Netherland</u>, 518 U.S. 152, 162-63 (1996); <u>see also</u> <u>Shumway v. Payne</u>, 223 F.3d 982, 987 (9th Cir. 2000).

A federal district court does "not sit as a 'super' state supreme court" with general supervisory authority over the proper application of state law.  <u>Smith v. McCotter</u>, 786 F.2d 697, 700 (5th Cir. 1986); <u>see also</u> <u>Lewis v. Jeffers</u>, 497 U.S. 764, 780 (1990) (holding that federal habeas courts must respect a state court's application of state law); <u>Jackson</u>, 921 F.2d at 885 (concluding that federal courts have no authority to review a state's application of its law).  Federal courts may grant habeas relief only to correct errors of federal constitutional magnitude. <u>Oxborrow v. Eikenberry</u>, 877 F.2d 1395, 1400 (9th Cir. 1989) (stating that federal courts are not concerned with errors of state law unless they rise to the level of a constitutional violation).

The Supreme Court, in <u>Lockyer v. Andrade</u>, 538 U.S. 63 (2003), stated that "AEDPA does not require a federal habeas court to adopt any one methodology in deciding the only question that matters

under § 2254(d)(1) -- whether a state court decision is contrary
to, or involved an unreasonable application of, clearly established
Federal law." <u>Id.</u> at 71 (citation omitted).  A federal court is
not required to review the state court decision <u>de novo</u>.  <u>Id.</u>
Rather, a federal court can proceed directly to the reasonableness
analysis under § 2254(d)(1).  <u>Id.</u>

The "novelty" in § 2254(d)(1) is "the reference to 'Federal
law, <u>as determined by the Supreme Court of the United States</u>.'"
<u>Lindh v. Murphy</u>, 96 F.3d 856, 869 (7th Cir. 1996) (en banc), <u>rev'd</u>
<u>on other grounds</u>, 521 U.S. 320 (1997) (emphasis added).  Section
2254(d)(1) "explicitly identifies only the Supreme Court as the
font of 'clearly established' rules." <u>Id.</u>  "[A] state court
decision may not be overturned on habeas corpus review, for
example, because of a conflict with Ninth Circuit-based law."
<u>Moore</u>, 108 F.3d at 264.  "[A] writ may issue only when the state
court decision is 'contrary to, or involved an unreasonable
application of,' an authoritative decision of the Supreme Court."
<u>Id.</u>; <u>see also</u> <u>Baylor v. Estelle</u>, 94 F.3d 1321, 1325 (9th Cir.
1996); <u>Childress v. Johnson</u>, 103 F.3d 1221, 1225 (5th Cir. 1997);
<u>Devin v. DeTella</u>, 101 F.3d 1206, 1208 (7th Cir. 1996).

Furthermore, with respect to the factual findings of the trial
court, AEDPA provides:

> In a proceeding instituted by an application for a
> writ of habeas corpus by a person in custody pursuant to
> the judgment of a State court, a determination of a
> factual issue made by a State court shall be presumed to
> be correct.  The applicant shall have the burden of
> rebutting the presumption of correctness by clear and
> convincing evidence.

28 U.S.C.A. § 2254(e)(1) (West Supp. 2006).

//

11

### IV.   DISCUSSION

In his current Petition for Writ of Habeas Corpus, Love claims the prosecutor's use of a peremptory challenge that resulted in the exclusion of the only African-American juror, as well as the trial court's denial of Love's motion to set aside the peremptory challenge, resulted in a violation of Petitioner's right to equal protection under the Fourteenth Amendment.  (Pet. 5.)

**A.    Love's Jury Selection Claim Fails.**

Although Petitioner does not cite any cases in his pending Petition, his Traverse makes it clear that he challenges the constitutionality of the prosecutor's peremptory challenge based on the United States Supreme Court's opinion in <u>Batson v. Kentucky</u>, 476 U.S. 79 (1986), and its progeny.  (<u>See</u> Traverse 6-11.)

The standard for a <u>Batson</u> challenge was restated earlier this year in the Supreme Court case of <u>Rice v. Collins</u>:

> A defendant's <u>Batson</u> challenge to a peremptory strike requires a three-step inquiry.  First, the trial court must determine whether the defendant has made a prima facie showing that the prosecutor exercised a peremptory challenge on the basis of race.  Second, if the showing is made, the burden shifts to the prosecutor to present a race-neutral explanation for striking the juror in question. . . .  Third, the court must then determine whether the defendant has carried his burden of proving purposeful discrimination.

<u>Rice v. Collins</u>, __ U.S. __, __, 126 S. Ct. 969, 973-74 (2006) (citing <u>Batson</u>, 476 U.S. at 98; <u>Miller-El v. Dretke</u>, 545 U.S. 231, __, 125 S. Ct. 2317, 2324-25 (2005)).

**1.    The First Batson Step Requires A Prima Facie Showing.**

Because the California Supreme Court summarily denied Love's petition for review (<u>see</u> Lodgment No. 7, <u>People v. Love</u>, No. S132156, order at 1), this Court "looks through" that opinion and

reviews the "last reasoned" state court decision.  <u>Medina v. Hornung</u>, 386 F.3d 872, 877 (9th Cir. 2004).  In this case, the last reasoned decision was by the California Court of Appeal on direct appeal.  (<u>See</u> Lodgment No. 5, <u>People v. Love</u>, No. D043053, slip op. at 1-9.)

In addressing Petitioner's <u>Batson</u>/<u>Wheeler</u> argument[1], the California appellate court stated:  "The prima facie showing requires the objector to produce evidence showing it is more likely than not the peremptory challenge, if unexplained, was based on impermissible group bias."  (<u>Id.</u> at 5 (citation omitted).)  Since that decision, the United States Supreme Court rejected the California standard as "an inappropriate yardstick by which to measure the sufficiency of a prima facie case."  <u>Johnson v. California</u>, 545 U.S. 162, __, 125 S. Ct. 2410, 2416 (2005).  "Instead, a defendant satisfies the requirements of <u>Batson</u>'s first step by producing evidence sufficient to permit the trial judge to draw an inference that discrimination has occurred."  <u>Id.</u>, 545 U.S. at __, 125 S. Ct. at 2417.  This is a lesser standard than the one the California appellate court applied.  <u>See</u> <u>Williams v. Runnels</u>, 432 F.3d 1102, 1106 (9th Cir. 2006) (citing <u>id.</u>, 545 U.S. at __, 125 S. Ct. at 2416).

To establish an inference of discrimination solely from evidence of a prosecutor's use of peremptory challenges, a criminal defendant must make the following showing:

---

[1] Love cited <u>Batson</u> in his opening appellate brief.  (Lodgment No. 2, Appellant's Opening Brief at 10-11, <u>People v. Love</u>, No. D043053 (citing <u>Batson</u>, 476 U.S. at 79, 95).)  Therefore, although the California Court of Appeal did not cite or refer to <u>Batson</u> in its opinion, the federal claim was "fairly presented" to the state court.  <u>See</u> <u>Duncan</u>, 513 U.S. at 365.

> [T]he defendant first must show that he is a member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race.  Second, the defendant is entitled to rely on the fact . . . that peremptory challenges constitute a jury selection practice that permits those to discriminate who are of a mind to discriminate.  Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race.

Johnson, 545 U.S. at __, 125 S. Ct. at 2416-17 (internal citations and quotation marks omitted).  A pattern of striking jurors of a particular race or specific comments or questions by the prosecutor may be other relevant circumstances that support an inference of discriminatory purpose, but evidence of a pattern is not required. Batson, 476 U.S. at 96-97; United States v. Vasquez-Lopez, 22 F.3d 900, 902 (9th Cir. 1994).

The state appellate court's holding that there was no prima facie showing of bias is a factual finding that would normally be entitled to deference on habeas review.  Paulino v. Castro, 371 F.3d 1083, 1090 (9th Cir. 2004) (citations omitted).  But because the state court applied the incorrect legal standard in deciding whether Love stated a prima facie case under Batson, this Court must review Petitioner's Batson claim de novo.  Williams, 432 F.3d at 1105 & n.3 (citing and quoting id.).

Both Love and McGee are African-American.  (See Traverse 8.) Thus, they are members of the same cognizable racial group.  Ms. McGee was the only African-American potential juror remaining in the jury pool after two other African-American potential jurors were excused for hardships.  (Lodgment No. 9, Rep.'s Augmented Tr. vol. 6, 371-72.)

14

Mr. Kowalski was the prosecutor originally assigned to Petitioner's case, but he became ill during voir dire and was replaced by Mr. Baker. (<u>Id.</u> at 307, 348.) By the time Baker had come into the case, seven peremptory challenges had been used by the prosecution. (<u>Id.</u> at 368.) Baker conducted a brief voir dire of the remaining jurors, only addressing one juror directly. (<u>Id.</u> at 364-66.) Ms. McGee was the first juror excused during Baker's use of the prosecution's final four peremptory challenges. (<u>Id.</u> at 369-70.)

"The 'Constitution forbids striking even a single prospective juror for a discriminatory purpose.'" <u>Williams v. Runnels</u>, 432 F.3d at 1107 (quoting <u>Vasquez-Lopez</u>, 22 F.3d at 902). Contrary to the trial judge's ruling in Love's case (Lodgment No. 9, Rep.'s Augmented Tr. vol. 6, 372-73), no pattern of discrimination need be shown. A prima facie case of purposeful discrimination is established if "(1) the prospective juror is a member of a 'cognizable racial group,' (2) the prosecutor used a peremptory strike to remove the juror, and (3) the totality of the circumstances raises an inference that the strike was motivated by race." <u>Boyd v. Newland</u>, 455 F.3d 897, 901 (9th Cir. 2006).

Both the state trial court and the state appellate court applied incorrect legal standards in assessing whether Love made a prima facie case of discriminatory purpose under <u>Batson</u>. The trial court erroneously held that Petitioner needed to show a pattern of discrimination. (<u>See</u> Lodgment No. 9, Rep.'s Augmented Tr. vol. 6, 372-73.) Furthermore, the trial judge did not permit Love to present evidence that would have allowed the judge to draw an inference that discrimination had occurred. (<u>See Id.</u> at 371

1  (addressing the prosecutor to hear his reasons for striking

2  McGee.)  The appellate court held Love to a higher standard than

3  required for presenting a prima facie case under Batson.  (See

4  Lodgment No. 5, People v. Love, No. D043053, slip op. at 5.)

5  Nevertheless, the California Court of Appeal's decision

6  affirming Petitioner's conviction did not rest solely on the basis

7  that Love failed to present a prima facie case of discrimination in

8  the jury selection process.  The state court alternatively held

9  that even "[a]ssuming Love's showing satisfied his prima facie

10  obligation, there is substantial evidence to support the trial

11  court's finding the prosecution's peremptory challenge of Ms.

12  M[cGee] was not based on an improper group bias." (Id. at 7.)

13  This alternative holding will be examined to determine whether Love

14  is entitled to habeas relief under AEDPA.

15  　　　2.  **This Court Will Review the California Court**

16  　　　　　**of Appeal's Alternative Holding De Novo.**

17  In Love's case, the California Court of Appeal required him to

18  make a prima facie case with evidence showing that it was "more

19  likely than not" that the prosecutor's peremptory challenge was

20  based on impermissible group bias. (Lodgment No. 5, People v.

21  Love, No. D043053, slip op. at 5.)  The Supreme Court rejected that

22  standard as too onerous under Batson.  Johnson v. California, 545

23  U.S. at __, 125 S. Ct. at 2417.  Whether Love made a prima facie

24  showing of bias and can satisfy the other two elements of a Batson

25  claim must be determined de novo.  Williams v. Runnels, 432 F.3d at

26  1105 n.3 (quoting Paulino v. Castro, 371 F.3d at 1090.)

27  This Court's evaluation of the three elements of a Batson

28  challenge mirrors the discussion by the California Court of Appeal.

The state court did not mention <u>Batson</u> in its alternative holding affirming Love's conviction.  (<u>See</u> Lodgment No. 5, <u>People v. Love</u>, No. D043053, slip op. at 7-9.)  Nonetheless, its opinion essentially analyzes the last two steps outlined in <u>Batson</u>.  (<u>See</u> <u>id.</u> (examining whether the prosecutor offered a legitimate race-neutral reason for its challenge and whether the trial court properly determined the stated reason was genuine).)

Under the Supreme Court's recent guidance in <u>Johnson v. California</u>, this Court finds Love's showing "sufficient to permit the trial judge to draw an inference that discrimination has occurred."  545 U.S. at __, 125 S. Ct. at 2417.  McGee was the only African-American on the panel, and prosecutor Baker used his first peremptory strike to remove her.  See <u>Boyd v. Newland</u>, 455 F.3d at 901.  Furthermore, the prosecutor did not follow his personal preference of striking teachers or social workers; he permitted three teaching-connected jurors to remain on the jury.  (<u>Compare</u> Lodgment No. 9, Rep.'s Augmented Tr. vol. 6, 371, <u>with</u> Lodgment No. 5, <u>People v. Love</u>, D043053, slip op. at 8 n.5.)

After a prima facie showing of bias, the last two steps of the <u>Batson</u> inquiry are whether the prosecutor presented "a race-neutral explanation for striking the juror in question" and whether, after evaluating the persuasiveness of the prosecutor's stated justification, "the defendant has carried his burden of proving purposeful discrimination."  <u>Rice</u>, __ U.S. at __, 126 S. Ct. at 973-74 (citations omitted).  "'[T]he second step of this process does not demand an explanation that is persuasive, or even plausible'; so long as the reason is not inherently discriminatory, it suffices."  <u>Id.</u>

The prosecutor stated that his reason for challenging juror McGee was "that she's a social worker and eligibility worker." (Lodgment No. 9, Rep.'s Augmented Tr. vol. 6, 371.)  Prosecutor Baker explained that it was his personal jury-selection preference not to allow teachers or social workers to sit on the jury because "[t]hey are not favorable jurors to the prosecution[,]" and he noticed from Kowalski's notes that McGee was an eligibility worker. (Id. at 371-72.)

Petitioner questioned whether Baker had removed all teachers and social workers from the jury.  (Id. at 373.)  Neither Baker nor the trial judge answered that question.  (See id.)  Instead, the court found no pattern of discrimination and denied Love's motion. Id.  The court added:  "[I]f a pattern were established, the employment background of Ms. McGee . . . would be a reasonable explanation" for striking her.  (Id.)

The racial composition of the jury after the prosecutor's challenge of McGee is not part of the record, other than the challenge eliminated the only African-American potential juror. There is no indication from the prosecution's questions and statements during voir dire that the decision to strike McGee had anything to do with race.  (See Lodgment No. 9, Rep.'s Augmented Tr. vol. 5, 291-92 (Kowalski's questions to McGee and McGee's statement that inmates are "not [in prison] because they want to be"); Lodgment No. 9, Rep.'s Augmented Tr. vol. 6, 364-66 (Baker's voir dire).)

The government's other peremptory challenges were exercised against a variety of potential jurors -- the first seven by Mr. Kowalski, the original prosecutor, and the last four by Mr. Baker,

his replacement.  (Lodgment No. 9, Rep.'s Augmented Tr. vol. 5, 261-63, 297-98; Lodgment No. 9, Rep.'s Augmented Tr. vol. 6, 369-70.)  One of the jurors struck by Baker has a Hispanic last name; six of the seven struck by Kowalski have Hispanic last names. (Lodgment No. 9, Rep.'s Augmented Tr. vol. 5, 261-63, 297-98; Lodgment No. 9, Rep.'s Augmented Tr. vol. 6, 369.)

The questions asked of some of those potential jurors during voir dire and their responses tend to refute an inference of racially discriminatory motive, however.  (See Lodgment No. 9, Rep.'s Augmented Tr. vol. 5, 207-08 (indicating potential juror wondered why Petitioner could not get an attorney), 222 (revealing that potential juror's ex-husband and father of her children served time in prison), 226 (showing potential juror's definition of beyond a reasonable doubt standard was less favorable to the prosecution), 241-42 (revealing same potential juror believed self-defense was the only circumstance in which a correctional officer should hit an inmate), 252 (indicating a couple of potential jurors noticed Love was wearing handcuffs), 261 (showing potential juror believed Petitioner should get "an extra point" for representing himself), 278-84 (indicating potential juror believed correctional officers should know physical abuse is likely to be a part of their job).)

The trial judge's decision to credit the prosecutor's race-neutral reason for striking Ms. McGee from the jury was supported by the record.  As the appellate court stated, the supporting record evidence included "the fact the prosecution also peremptorily challenged the only other juror whose occupation was connected to social work.  Moreover, the fact the prosecution left

three persons connected with <u>teaching</u> on the jury does not detract from the conclusion the prosecution had a genuine antipathy towards <u>social workers</u>."  (Lodgment No. 5, <u>People v. Love</u>, No. D043053, slip op. at 8.)

None of the final twelve jurors or the alternate were social workers.  (<u>See</u> Lodgment No. 9, Rep.'s Augmented Tr. vol. 5, 155 (pharmacy technician), 176 (instructional assistant), 180 (customer service manager), 268-69 (recent San Diego State University graduate and team coordinator at General Dynamics); Lodgment No. 9, Rep.'s Augmented Tr. vol. 6, 351-54 (homemaker, postal worker, licensed optician, teacher's aid, school teacher, clerical worker, and employee of the Calexico School District).)  Of the three peremptory challenges used to strike others from the jury, Baker used one to strike a potential juror who worked at the Social Security office.  (Lodgment No. 9, Rep.'s Augmented Tr. vol. 5, 176; Lodgment No. 9, Rep.'s Augmented Tr. vol. 6, 369.)  This was consistent with the reason he gave for striking juror McGee.

Additionally, Kowalski used one of his peremptory challenges to strike the only potential juror other than McGee who identified herself as an eligibility worker.  (Lodgment No. 9, Rep.'s Augmented Tr. vol. 5, 181, 297.)  Baker relied on Kowalski's notes in striking McGee from the jury.  (Lodgment No. 9, Rep.'s Augmented Tr. vol. 6, 371.)

At step three of the <u>Batson</u> analysis, Love has the burden of proving purposeful discrimination.  <u>Rice</u>, __ U.S. at __, 126 S. Ct. at 974.  "[T]he ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the

1  strike."  Id. (quoting Purkett v. Elem, 514 U.S. 765, 768 (1995).

2  Petitioner has not carried his burden.

3      The trial court found that the prosecution provided a

4  reasonable explanation for striking McGee from the jury and "there

5  was not a discriminatory motive based upon her membership of the

6  protective class." (Lodgment No. 9, Rep.'s Augmented Tr. vol. 6,

7  373.)  For these reasons, it denied Love's People v. Wheeler

8  motion.  (Id.)  The California Court of Appeal determined that the

9  trial court's conclusion was supported by the record.  (Lodgment

10 No. 5, People v. Love, No. D043053, slip op. at 8-9.)

11      "Since the trial judge's findings [regarding a discriminatory

12 motive] largely will turn on evaluation of credibility, a reviewing

13 court ordinarily should give those findings great deference."

14 Batson, 476 U.S. at 98 n.21.  After conducting a de novo review of

15 the record and a comparative juror analysis, this Court finds that

16 Love has not established a Batson violation.  See also Boyd v.

17 Newland, 455 F.3d at 903 (noting the use of comparative juror

18 analysis).  Consequently, the decision by the state court was not

19 contrary to, or an unreasonable application of, clearly established

20 Supreme Court law.  See 28 U.S.C. § 2254(d)(1).  Furthermore, the

21 trial court's decision to credit the prosecutor's stated race-

22 neutral reason for striking McGee was not "an unreasonable

23 determination of the facts in light of the evidence presented."

24 See id. § 2254(d)(2).

25      For these reasons, Love's Batson claim does not entitle him to

26 habeas relief, and his Petition should be **DENIED**.

27 //

28 //

**B.    Petitioner Is Not Entitled to an Evidentiary Hearing.**

In his Traverse, Love requests an evidentiary hearing. (Traverse 2.)  This request may merely have been made in response to Respondent's assertion that Petitioner "is not entitled to an evidentiary hearing."  (Answer 2, ¶ VI; see Traverse 2 (arguing that "Petitioner is entitled to said [evidentiary] hearing . . . pursuant to 28 U.S.C. § 2254(e)(2)").)

When deciding whether an evidentiary hearing is appropriate, the Court's first task is to determine whether Love failed to develop the factual basis for his claim in state court. Insyxiengmay v. Morgan, 403 F.3d 657, 670 (9th Cir. 2005).  "Under AEDPA, 'a failure to develop the factual basis of a claim is not established unless there is a lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel.'" Id. at 670 (quoting Williams v. Taylor, 529 U.S. 420, 432 (2000)).

If a petitioner developed the record in state court, the federal habeas court examines whether an evidentiary hearing is appropriate or required under Townsend v. Sain, 372 U.S. 293 (1963).  There are six Townsend factors to consider:

> (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state-court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing.

Insyxiengmay, 403 F.3d at 670 (quoting Townsend, 372 U.S. at 313). When a Petitioner has developed the factual basis of his claim in state court and meets one of the Townsend factors, "'[a]n

22

evidentiary hearing on a habeas corpus petition is required whenever petitioner's allegations, if proved, would entitle him to relief.'" Id. (quoting Turner v. Marshall, 63 F.3d 807, 815 (9th Cir. 1995)).

If Love failed to develop the factual basis for his claim in state court, this Court is precluded from holding an evidentiary hearing unless he shows the claim relies on either:

> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2)(A)-(B). Even after satisfying § 2254(e)(2)(A)-(B), Petitioner must also "meet one of the Townsend factors and make colorable allegations that, if proved at an evidentiary hearing, would entitle him to habeas relief." Insyxiengmay, 403 F.3d at 670.

Love takes no position on whether the facts underlying his claim were developed in state court. (See Traverse 2.) The factual basis for his Batson challenge, although sparse, was before the trial judge. (See Lodgment No. 9, Rep.'s Augmented Tr. vol. 6, 371-73 (denying Petitioner's motion).) Furthermore, Love's claim that the prosecutor used a peremptory challenge in a racially discriminatory manner was fully developed in the state court record and considered by the appellate court, even if it was not fully

1   articulated in Petitioner's argument to the trial judge.  (See
2   Lodgment No. 9, Rep.'s Augmented Tr. vols. 5-6; See also Lodgment
3   No. 5, People v. Love, No. D043053, slip op. 5-8.)

4        Nevertheless, a transcript of the jury voir dire and the
5   exercise of peremptory challenges was part of the appellate record.
6   Because the factual basis of Petitioner's claim was developed in
7   state court, he must satisfy one of the six Townsend factors to be
8   entitled to an evidentiary hearing.   Insyxiengmay, 403 F.3d at 670.
9   None of the factors requires a hearing.  The merits of Love's claim
10  were resolved in the state court -- at both the trial and appellate
11  levels.  As discussed above, the state courts' resolution of the
12  factual questions regarding the credibility and genuineness of the
13  prosecutor's race-neutral reason is fairly supported by the record.
14  Moreover, the fact-finding procedure employed was adequate to give
15  Love a full and fair hearing; Petitioner has made no allegation of
16  newly discovered evidence; the material facts were adequately
17  developed in the state courts; and there is no indication that the
18  state courts did not provide Love a full and fair hearing.

19       Petitioner does not satisfy any of the Townsend factors;
20  consequently, his request for an evidentiary hearing is **DENIED**.

21                        **V. CONCLUSION**

22       For the above reasons, Love's Petition for Writ of Habeas
23  Corpus should be **DENIED**. In addition, Petitioner's request for an
24  evidentiary hearing is **DENIED**.

25       This Report and Recommendation will be submitted to the United
26  States District Court judge assigned to this case, pursuant to the
27  provisions of 28 U.S.C. § 636(b)(1).  Any party may file written
28  objections with the district court and serve a copy on all parties

on or before <u>October 6, 2006</u>.  The document should be captioned

"Objections to Report and Recommendation."  Any reply to the

objections shall be served and filed on or before <u>October 23, 2006</u>.

The parties are advised that failure to file objections within the

specified time may waive the right to appeal the district court's

order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153, 1157 (9th Cir. 1991).


    **IT IS SO ORDERED.**


Dated: September 7, 2006                 _Ruben Brooks_____

                                         RUBEN B. BROOKS
                                         United States Magistrate Judge

cc:  Judge Hayes
     All parties of record