# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALFREDRICK LOVE,<br><br>                    Petitioner,<br>   vs.<br>L.E. SCRIBNER, Warden,<br><br>                   Respondent. | CASE NO. 06cv640-WQH-RBB<br><br>ORDER |

HAYES, Judge:

The matter before the Court is the Report and Recommendation (Doc. # 55) of Magistrate Judge Ruben B. Brooks, filed on November 30, 2009, recommending that the Court grant Petitioner Alfredrick Love's Petition for Writ of Habeas Corpus (Doc. # 1), unless Love is retried within a reasonable period of time.

## BACKGROUND

In July of 2003, Love, an African-American, was tried and convicted in state court of battery on a non-confined person by a prisoner. During jury selection, after consideration of hardships, only one remaining venire-member was African-American, Gloria McGee. During the second day of jury selection, July 21, 2003, Assistant District Attorney Eric Baker exercised a peremptory challenge to excuse McGee from the jury panel.

Love made a timely objection to the prosecution's excusing McGee, arguing that the prosecution's peremptory challenge was racially motivated. The prosecution stated that McGee was excused because:

> she's a social worker and eligibility worker. I excused both of those that I believed to be that. That is a personal – my personal jury selection. Teachers and social workers don't sit on the jury. I referred to Chris Kowalski's notes who was in original voir dire. It appears she was an eligibility worker. They are not favorable jurors to the prosecution.

(Jt. Mot. to File Copy of Trans. at 371-72, Doc. # 45).[1]  Love responded by saying that,

> From my notes, she's not a teacher and social worker.  The only thing about her background has been law enforcement, which makes it seem – conventionally she would be leaning toward the District Attorney.  The only thing I can see that you would possibly dismiss her for is that she's African/American.

*Id.* at 372.[2]

The state trial court denied Love's challenge to the prosecution's use of its peremptory challenge on the grounds that Love did not make out a prima facie case of purposeful discrimination because Love was unable to show a "pattern" of racially motivated peremptory strikes.  *Id.*  Alternatively, the trial court denied Love's challenge on the grounds that the prosecution stated a reasonable race-neutral explanation for excusing the lone remaining African-American member of the jury pool.  *Id.* at 372-73.

On June 16, 2004, Love filed an appeal, arguing that he was entitled to a new trial based upon the prosecution's racially motivated use of a peremptory challenge.  On February 2, 2005, the California Court of Appeal affirmed the conviction.

On March 22, 2006, Love filed a Petition for Writ of Habeas Corpus in this Court. (Doc. # 1).  On September 7, 2006, the Magistrate Judge issued a report and recommendation recommending that Love's Petition be denied.  (Doc. # 11).  On January 19, 2007, this Court adopted the report and recommendation and ordered judgment to be entered.  (Doc. # 15).

On March 19, 2008, the Ninth Circuit reversed the judgment.  (Doc. # 25).  The Ninth Circuit stated:

> Because the California Court of Appeal 'unreasonabl[y] appli[ed] ... clearly established Federal Law,' 28 U.S.C. § 2254(d)(1), with respect to the comparative analysis, the inquiry into whether the prosecutor's reason for rejecting the black juror was pretextual must be determined *de novo* on federal habeas.
>
> The dissent maintains that we can determine on the current record that

---

[1] Baker was not present during the first day of jury selection, when McGee was questioned by the original prosecutor, Kowalski.  On day two of jury selection, Kowalski was unavailable due to illness, and Baker replaced him.  (Jt. Mot. to File Copy of Trans. at 347, Doc. # 45).

[2] During voir dire, McGee stated that her brother-in-law was a correctional officer at Calipatria State Prison and her sister was a supervisor in the records section of the sheriff's department.  *Id.* at 275.

> there was no pretext, because the prosecutor did strike all the social workers, although not all the teachers. This analysis repeats the error of the California Court of Appeal. The prosecutor's stated reason applied to both teachers and social workers.... [W]here, as here, the prosecutor's stated reason does not hold up, '[i]ts pretextual significance does not fade,' *Miller-El v. Dretke*, 545 U.S. 231, 252 (2005), because an appellate judge, looking at the record, can construct a different rationale, here an antipathy toward social workers but not teachers.
>
> The record, as it stands, does not provide an adequate basis for determining *de novo* whether the real reason the prosecutor struck Ms. M. was her race. The [state] trial court did not allow Love to examine the prosecutor's actual reasons for keeping teaching-connected individuals, while striking Ms. M. from the jury....
>
> Under the circumstances, the appropriate remedy is a remand for an evidentiary hearing.
>
> We therefore reverse and remand for an evidentiary hearing to determine whether the prosecution struck Ms. M. from the jury because of her race. If, on remand, the district court finds discrimination, the petition shall be granted. If, however, the district court finds no discrimination, the judgment denying the petition shall be reinstated.

*Love v. Scribner*, 278 F. App'x 714, 718 (9th Cir. 2008) (citations omitted).

On July 14, 2008, this Court referred the case to the Magistrate Judge following remand from the Ninth Circuit. (Doc. # 28). On March 12, 2009, the Magistrate Judge conducted an evidentiary hearing, at which two witnesses testified: Baker and Love. (Doc. # 43, 44-1).

On November 30, 2009, the Magistrate Judge issued the Report and Recommendation. (Doc. # 55).

**A.     Report and Recommendation**

**1.     Motion to Strike Petitioner's Exhibit B**

Petitioner attached a transcript of a December 2008 interview of Baker as Exhibit B to Petitioner's post-evidentiary-hearing brief. (Doc. # 48). The interview was conducted by Respondent's counsel, and a transcript of the interview was prepared and provided to Petitioner's counsel. At the evidentiary hearing, neither counsel for Petitioner nor counsel for Respondent sought to introduce the interview transcript into evidence, although both referred to the prior interview.

The Magistrate Judge granted Respondent's motion to strike the transcript. (Doc. # 55 at 17-22). The Magistrate Judge stated:

> Petitioner was not diligent in seeking to expand the record after the close of

> evidence. The Baker interview transcript is not the type of post-evidentiary hearing material for which Rule 7 [of the Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254] is suited. The interview was tape recorded and does not appear to have been given under oath. The transcript is not signed, was not reviewed, and the question-and-answer session took place long after the filing of Love's habeas Petition. The content of the interview is not especially important or probative and does little to 'clarify the relevant facts.'

(Doc. # 55 at 22 (quoting *Vasquez v. Hillery*, 474 U.S. 254, 258 (1986))).

### 2. *Batson*[3] Challenge

In the Report and Recommendation, the Magistrate Judge analyzed Love's *Batson* challenge at length, and concluded:

> Baker's categorical explanation for striking McGee -- teachers and social workers don't sit on the jury -- was not consistently applied. He challenged McGee but permitted non-African-Americans [who were teachers or had a teaching-related occupation] to serve on the jury. Alternatively, if being a teacher or social worker was only one of many factors the prosecutor generally considered, Baker was unable to articulate any additional reasons he had for challenging McGee. He did not identify any of his guidelines as the actual reason for challenging her or not challenging others. The prosecutor simply did not recall what he had done five and one-half years earlier. In Love's case, additional reasons did not come from Baker, but from Respondent's counsel. Her speculation is not entitled to any weight. The evidence indicates that the peremptory strike was racially motivated.
>
> On July 21, 2003, Baker struck the only African-American seated on the jury to try this African-American defendant. Love has proven, by a preponderance of the evidence, that the prosecutor did not strike McGee from the jury simply because she was an eligibility worker. The circumstances of that peremptory strike, Baker's inability to articulate a credible explanation for the strike, and a comparative analysis of McGee and jurors who were permitted to serve are sufficient to conclude that Baker used a peremptory challenge to eliminate McGee from the jury because she was African-American. The prosecutor's strike violated the Equal Protection Clause as described in *Batson v. Kentucky*, 476 U.S. 79. The Court recommends that unless Love is retried within a reasonable period to be set by the district court, his Petition for Writ of Habeas Corpus be GRANTED.

(Doc. # 55 at 47-48).

### B. Objections to the Report and Recommendation

On December 17, 2009, Respondent filed objections to the Report and Recommendation (Doc. # 57), and on December 18, 2009, Petitioner filed objections to the Report and Recommendation (Doc. # 58). On January 8, 2010, Petitioner filed a reply to

---

[3] In *Batson v. Kentucky*, 476 U.S. 79, 85-88 (1986), the United States Supreme Court held that the Equal Protection Clause of the Fourteenth Amendment prohibits a prosecutor from purposefully excluding potential jurors on the basis of racial identity.

Respondent's objections. (Doc. # 59).

### 1. Respondent's Objections

Respondent summarized his objections as follows:

> First, the Magistrate Judge ignored the circumstantial evidence presented regarding the prosecutor's motives. The prosecutor testified to the characteristics he was looking for in Petitioner's jury. He testified regarding the types of jurors he favored and disfavored at the time and stated that he applied those standards and preferences while selecting Petitioner's jury. The Magistrate Judge ignored this testimony and categorized it as the prosecutor's or Respondent's counsel's speculation. There is nothing speculative about testifying to one's habit and practices. There is no legal cause for disregarding the prosecutor's testimony regarding the practices he applied during Petitioner's trial.
>
> Additionally, the Magistrate Judge found the state had an obligation to present the prosecutor's actual reasons for retaining each of the teaching-connected jurors that formed the basis of the court's comparative juror analysis. Although the state has a burden to present the prosecutor's actual reason for striking the minority juror and a failure to meet that burden constitutes evidence of discrimination, there is no burden to present the prosecutor's actual reasons for retaining all of the jurors who remain on the jury. The Magistrate Judge improperly imposed a burden on the state where none exists and then found evidence of discrimination in the state's perceived inability to meet that burden.
>
> In so doing, the Magistrate Judge failed to conduct a true comparative juror analysis. The Magistrate Judge did not conduct a side-by-side comparison of the minority juror who was removed and the non-minority jurors who remained on the jury. The Magistrate Judge failed to address the dissimilarities between the jurors or explain how the prosecutor's decision to retain the non-minority jurors was probative of his motive to strike the minority juror despite the considerable differences between the jurors. Rather, the Magistrate Judge inferred discrimination strictly from the prosecutor's inability to recall the jurors or provide direct testimony regarding why he chose to keep them on the jury. A true comparative juror analysis reveals that no similarly-situated jurors remained on the jury. Petitioner has failed to meet his burden to show purposeful race discrimination, and this Court must deny his Petition with prejudice.

(Doc. # 57 at 1-2).

Petitioner filed a reply, contending that "Respondent mischaracterizes mere insufficient evidence supporting his theories as assigning a burden of proof" (Doc. # 59 at 4), and "Respondent's critique of the comparative analysis is meritless and grounded on incorrect factual assertions" (Doc. # 59 at 5).

### 2. Petitioner's Objections

Petitioner "accepts Judge Brooks's ultimate conclusion and recommendation, but he

objects to specific findings and rulings in the R&R.... [Petitioner] ... requests the Court reject those portions, but otherwise adopt the R&R in full." (Doc. # 58 at 1). Petitioner contends that "this Court should reject the [Magistrate Judge's] legal conclusion that an expansive definition of 'teacher' is not required by the law of the case." (Doc. # 58 at 2). Petitioner objects to the Magistrate Judge's granting of Respondent's motion to strike the transcript of the December 2008 interview of Baker. Petitioner contends that the Magistrate Judge erroneously assigned little weight to Petitioner's arguments concerning venire-member Ramirez, and Baker's exercising of his first peremptory challenge against McGee. Finally, Petitioner requests that the Court make two "corrections and clarifications" to the Report and Recommendation.

**STANDARD OF REVIEW**

The duties of the district court in connection with a magistrate judge's report and recommendation are set forth in Rule 72 of the Federal Rules of Civil Procedure and 28 U.S.C. § 636(b)(1). The district court must "make a *de novo* determination of those portions of the report ... to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. §636(b)(1); *see also United States v. Remsing*, 874 F.2d 614, 617 (9th Cir. 1989).

**DISCUSSION**

The Court has considered all objections filed by the parties and reviewed *de novo* all portions of the Report and Recommendation. In the Report and Recommendation, the Magistrate Judge set forth the correct legal standards and undertook "'a sensitive inquiry into such circumstantial and direct evidence of intent as may be available,'" including "a comparative analysis of similarly situated jurors." *Green v. LaMarque*, 532 F.3d 1028, 1030 (9th Cir. 2008) (quoting *Batson*, 476 U.S. at 93); *see also Miller-El v. Dretke*, 545 U.S. 231, 241 (2005) ("If a prosecutor's proffered reason for striking a black panelist applies just as well to an otherwise-similar nonblack who is permitted to serve, that is evidence tending to prove purposeful discrimination to be considered at *Batson*'s third step."). After considering all of the available evidence, and giving due weight to the Magistrate Judge's credibility findings,

1  the Court adopts the finding of the Magistrate Judge that the prosecutor's strike of McGee
2  violated the Equal Protection Clause, as described in *Batson*. *See Snyder v. Louisiana*, 552
3  U.S. 472, 128 S. Ct. 1203, 1208 (2008)  ("'[T]he Constitution forbids striking even a single
4  prospective juror for a discriminatory purpose'") (quoting *United States v. Vasquez-Lopez*, 22
5  F.3d 900, 902 (9th Cir. 1994)).

6  Respondent objects that the Magistrate Judge "disregarded Mr. Baker's testimony
7  regarding the general practices he employed to select Petitioner's jury." (Doc. # 57 at 3). The
8  Ninth Circuit has indicated that "a firm set of specific guidelines that [a prosecutor]
9  consistently employed" during jury selection may constitute "competent evidence of a
10 prosecutor's actual reasons for striking certain jurors." *Paulino v. Harrison*, 542 F.3d 692, 701
11 n.10 (9th Cir. 2008) (declining to reach the issue because the prosecutor "did not testify to a
12 firm set of specific guidelines that she consistently employed").  In the Report and
13 Recommendation, the Magistrate Judge expressly considered Baker's testimony concerning
14 his "general practices." (Doc. # 55 at 25, 43-44). However, the Magistrate Judge noted that
15 Baker testified that his handling of Love's case was not consistent with how he would
16 normally conduct a case. (*Id.* at 43.) The Magistrate Judge reasonably concluded that Baker's
17 "uneven application of his general principles," as illustrated by comparative juror analysis,
18 constitutes evidence of pretext. (*Id*. at 44). Even Baker testified that his "general approach
19 to jury selection involves rules of thumb," and "the rules of thumb are sometimes applied and
20 sometimes not." (Doc. # 44-1 at 72). Baker's "general practices" were not "a firm set of
21 specific guidelines that [he] consistently employed," and the Magistrate Judge reasonably
22 discounted them. *Paulino*, 542 F.3d at 701 n.10. This objection is overruled.

23 Respondent objects that "the Magistrate Judge imposed a burden on the state where
24 none exists," because, at stage three of the *Batson* inquiry, "the state did not have a burden to
25 produce the reasons for retaining Jurors No. 4, 8, 10, and prospective alternate juror Ms.
26 [Garibay]." (Doc. # 57 at 7-8). In the Report and Recommendation, the Magistrate Judge
27 correctly set forth the legal framework surrounding *Batson* challenges, including the burden
28 of proof. (Doc. # 55 at 22-24; *see also id.* at 23-24 ("At step three of the *Batson* inquiry, the

question is 'whether the opponent of the strike has proved purposeful racial discrimination.' The ultimate burden of persuasion regarding racial motivation 'rests with, and never shifts from, the opponent of the strike.' Thus, Petitioner Love has the burden of proving purposeful discrimination.") (quoting *Johnson v. California*, 545 U.S. 162, 168, 171 (2005))). The Magistrate Judge confined his analysis to step three of the *Batson* inquiry. The Magistrate Judge did not impose a burden on Respondent to produce reasons for retaining the jurors who were the subject of comparative analysis with McGee. Instead, the Magistrate Judge properly applied the principle that "[i]f a prosecutor's proffered reason for striking a black panelist applies just as well to an otherwise-similar nonblack who is permitted to serve, that is evidence tending to prove purposeful discrimination to be considered at *Batson*'s third step." *Miller-El v. Dretke*, 545 U.S. 231, 241 (2005). This objection is overruled.

Finally, Respondent objects that "the Magistrate Judge failed to conduct a true comparative analysis," because "Ms. McGee was not comparable to Jurors No. 4, 8, 10 or prospective alternate juror Ms. [Garibay]." (Doc. # 57 at 2, 9). "Two jurors do not have to have all the same characteristics to be similarly situated. 'A per se rule that a defendant cannot win a *Batson* claim unless there is an exactly identical white juror would leave *Batson* inoperable; potential jurors are not products of a set of cookie cutters.'" *Green v. LaMarque*, 532 F.3d 1028, 1030 (9th Cir. 2008) (quoting *Miller-El*, 545 U.S. at 247 n.6). In the Report and Recommendation, the Magistrate Judge conducted a thorough and proper comparative analysis. The Magistrate Judge recognized that "[f]or a comparative analysis to be useful, the compared jurors must be similarly situated." (Doc. # 55 at 34 (citing *Mitleider v. Hall*, 391 F.3d 1039, 1049 n.9, 1050 (9th Cir. 2004)). However, the Magistrate Judge properly refused to engage in "speculation about the prosecutor's knowledge or motive." (Doc. # 55 at 35 (citing *Paulino*, 542 F.3d at 700)). "A *Batson* challenge does not call for a mere exercise in thinking up any rational basis. If the stated reason does not hold up, its pretextual significance does not fade because a trial judge, or an appeals court, can imagine a reason that might not have been shown up as false." *Miller-El*, 545 U.S. at 252. Respondent's theory regarding why prospective alternate juror Garibay was not similarly situated to McGee, *see* Doc. # 57 at 9,

1  constitutes post-hoc speculation by Respondent's counsel, and is contradicted by Baker's
2  testimony. (Doc. # 44-1 at 77 ("[W]hen you're looking at an alternate ... I don't think there's
3  any difference in philosophy and approach."); 78 ("I would have guessed I would have struck
4  her.")). Respondent's arguments about Jurors No. 4, 8 and 10 involve application of Baker's
5  inconsistently-applied "the rules of thumb," discussed above. (Doc. # 44-1 at 72). McGee
6  shared some of Baker's positively-viewed "rules of thumb" (e.g., she was married, and had
7  children, a blue-collar spouse, a sister who worked in a sheriff's office, and a brother-in-law
8  who was a correctional officer). To the extent Baker based his decision-making as to Jurors
9  No. 4, 8, 10 and alternate Garibay on his "rules of thumb" and he was unaware of whether
10 McGee did or did not share those relevant characteristics (such as town of residence, age,
11 occupation of spouse, existence of children, etc.), Baker's failure to question McGee to
12 determine whether she likewise shared these positively-viewed "rules of thumb" is itself
13 evidence of pretext. *See Miller-El*, 545 U.S. at 246 ("The State's failure to engage in any
14 meaningful voir dire examination on a subject the State alleges it is concerned about is
15 evidence suggesting that the explanation is a sham and a pretext for discrimination."); *United*
16 *States v. Esparza-Gonzalez*, 422 F.3d 897, 905 (9th Cir. 2005) ("[T]he prosecutor had very
17 little hard information to base this decision on. Although the prosecutor has no obligation to
18 question all potential jurors, his failure to do so [before] removing a juror of a cognizable
19 group ... may contribute to a suspicion that this juror was removed on the basis of race."). This
20 objection is overruled.

21        Petitioner objects to the Magistrate Judge's conclusion that an expansive definition of
22 "teacher" was not required by the law of the case doctrine. (Doc. # 58 at 2). In the Report and
23 Recommendation, the Magistrate Judge stated:

24        When making its juror comparisons, neither the law of the case doctrine nor the
          rule of mandate requires the Court to consider instructional assistants and
25        teacher's aides to be teachers. The prosecutor's stated race-neutral explanation
          is the touchstone. Even so, a comparison between McGee and each juror with
26        a teaching-related career is instructive. Prosecutor Baker acknowledged that the
          distinction between teachers, instructional assistants, and teacher's aides was not
27        one of kind, but of degree.

28 (Doc. # 55 at 33 (citing Doc. # 44-1 at 56-58)). The Magistrate Judge proceeded to conduct

1  a comparative juror analysis between McGee and each juror with a teaching-related career.
2  Petitioner fails to indicate how a comparative juror analysis would have proceeded any
3  differently had the Magistrate Judge concluded that an expansive definition of "teacher" was
4  required by the law of the case. Accordingly, this objection is overruled for failure to show
5  prejudice.

6  Petitioner objects to the Magistrate Judge's granting of Respondent's motion to strike
7  the transcript of the December 2008 interview of Baker. Petitioner contends that the December
8  2008 interview transcript, which was attached to Petitioner's Post-Hearing Legal Brief (Doc.
9  # 48), is "probative in triangulating the historical facts and in assessing the credibility of Mr.
10 Baker's testimony." (Doc. # 58 at 7-8). However, a review of Petitioner's Post-Hearing Legal
11 Brief shows that, with a single exception, his citations to the December 2008 interview
12 transcript are merely cumulative of his citations to Baker's testimony before the Magistrate
13 Judge. (Doc. # 48 at 7-12, 14, 17). The sole exception is in a footnote, where Petitioner states:

> [T]he fact there is no evidence of an official policy of discrimination is no more dispositive than in numerous cases where *Batson* claims were sustained without such a showing. It is noteworthy, though, that Baker had previously described *Batson/Wheeler* challenges as 'com[ing] up often in our county,' if only due to the local demographics, [citing to the December 2008 interview], but at the evidentiary hearing he retreated from this, saying only that they 'come up often during trial where the defense feels they may be violated.'

18 (Doc. # 48 at 18 n.15 (citations omitted)). In the Report and Recommendation, the Magistrate
19 Judge did not discuss the issue of whether there existed "evidence of an official policy of
20 discrimination." *Id*. Accordingly, this objection is overruled for failure to show prejudice.

21 Petitioner makes two additional objections regarding the weight the Magistrate Judge
22 assigned to two of Petitioner's arguments. (Doc. # 58 at 8-12). After review of these
23 objections and the relevant portions of the Report and Recommendation, the Court overrules
24 each objection for the reasons stated in the Report and Recommendation. (Doc. # 55 at 39-41,
25 47).

26 Finally, Petitioner requests that the Court make two "corrections and clarifications" to
27 the Report and Recommendation. (Doc. # 58 at 12). First, Petitioner asserts:
28  The R&R states:

> before entering the courtroom, Baker asked whether it was a 'life case,' to which the judge responded that there was a possible '20 indeterminate life sentence.'
>
> Actually, the trial transcript shows that the judge merely replied, '20,' and it was Baker who added the comment on the indeterminate life sentence.
>
> The R&R should be amended to clarify the proper attributions and that the numeral '20' in the exchange seemingly refers to the number of peremptory challenges allotted to each side in a case with a possible life sentence.

*Id.* (citing Cal. Code of Civ. Proc. § 231(a)). The Court will amend the Report and Recommendation to clarify the proper attributions from the transcript. There is no suggestion in the record or in the Report and Recommendation that Baker believed he had no remaining peremptory strikes or that he adjusted his juror selection strategy due to an erroneous belief about the number of his available strikes. Accordingly, this portion of the Report and Recommendation will not be amended further.

Pursuant to Petitioner's second requested correction, the Report and Recommendation will be amended to correct the spelling of the name of venire-member Lovecchio.

## CONCLUSION

IT IS HEREBY ORDERED that the Magistrate Judge's Report and Recommendation (Doc. # 55) is **ADOPTED** in its entirety, except for the following two amendments:

(1) Page 6, line 26 is stricken in its entirety and replaced with, "'20'. Baker responded, '20 indeterminate life sentence.'"

(2) On page 7, line 4, "Lovecchino" is stricken and replaced with "Lovecchio".

IT IS FURTHER ORDERED that the Petition for Writ of Habeas Corpus (Doc. # 1) will be **GRANTED**, unless the State of California grants Petitioner a new trial no later than 180 days from the date of this Order. The parties shall file a joint status report no later than 180 days from the date of this Order.

DATED: February 18, 2010

*William Q. Hayes*
**WILLIAM Q. HAYES**
United States District Judge